# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

Gary B. Campbell, on behalf himself and
all other similar situated,

                     Plaintiff,

Vs.                     Case No. 20-C-135

<u>Dodge County Sheriff Department Officials,</u>
Dale Schmidt, Sheriff Department, Lieutenant Katup,
Detective Chad Haase, Deputy Buelter, Deputy Michael Morell,
Deputy Ryan Schwartz, Deputies John Doe's (Badge 237, 202, and 207)
<u>Dodge County Detention Facility Officials,</u>
Anthony D. Brugger, Jail Administrator, Thomas Polsin,
Deputy Jail Administrator, Jason D. Hundt, Deputy Jail Administrator,
Program Specialist Ellis, <u>City Of Waupun,</u>
Supervisor John/Jane Doe, and Officer Ryan Schneider,

                     Defendants.

## TITLE 42 U.S.C. 1983 CIVIL RIGHTS COMPLAINT

Now Comes, the above-named plaintiff, Gary B. Campbell, Pro Se, pursuant to **Title 42 USC 1983** for violations of the plaintiff's constitutional under the 1st and 14th amendments of the United States Constitution, Due Process and Equal Protection Clauses. See **<u>Village V. Willowbrook</u>**, 528 U.S. 562, 120 S.Ct 1073 (2000); **<u>Monell V. Department of Social Services,</u>** 436 U.S. 159, 98 S.Ct. 2018 (1978); **<u>Wolff V. McDonnell</u>**, 418 U.S. 539, 94 S.Ct 2963 (1974); **<u>Dent V. Virginia</u>**, 129 U.S. 114, 9 S.Ct. 23 (1983), **<u>Malone V. Corr. Corp of Am</u>**, 553 F.3d 540, 542 (7th Cir. 2009). In addition the plaintiff is asking this honorable court to exercise supplemental jurisdiction **28 USC 1367,** over the plaintiff's state law claims pursuant to **<u>Ranue V. Dill,</u>** 74 Wis.2d 239 (1976); **<u>Schultz V. Franfort M.A. & P. Ins Co.,</u>** 151 Wis.2d 537, 139 N.W.2d 389 (1913)

As Grounds, the plaintiff asserts:

The plaintiff is a citizen of the State of Wisconsin and resides at 1814A W. Chambers Street, Milwaukee Wisconsin 53206. The defendants are citizens of the State of Wisconsin and are employees of the Dodge County Sheriff Department located in Juneau WI and City of Waupun Police employees located in Dodge County, WI.

This Honorable court has jurisdiction pursuant **28 USC 1331.**

### BACKGROUND

The plaintiff, Gary Campbell was the subject of a drug operation sting conducted by the State of Wisconsin, Dodge County Drug Task Force. The plaintiff sold crack cocaine 4 times to detective Chad Haase. As a result of plea agreement reached with the State of Wisconsin, the plaintiff was conviction 1-count of manufacture delivery of cocaine, as repeater and was sentence to 1 year county w/Huber law privileges, 5yr probation w/stayed 9-year sentence.

## STATEMENT OF CLAIMS

Detective Chad Haase was disgruntled with the court's decision not to send the plaintiff to prison and prompted Detective Haase to maliciously pursue the plaintiff out of ill will, malice and with malicious intentions. **Detective Haase did engage other law enforcement officials** in a conspiracy scheme and orchestrate a campaign of official harassment and targeting the plaintiff while out in the community. Detective Haase and other law enforcement officials engaged in malicious application of law enforcement powers. Detective Haase was determined and motived by personal animus to get the plaintiff's Huber law privileges revoked shortly after the plaintiff began serving his county jail sentence at the Dodge County Detention Facility. The plaintiff was able to establish a primary care doctor, dentist and chiropractor within the city of Waupun to secure Huber law passes to address health concerns as well as work. In February 2016 the plaintiff started noticing nearly every time he was coming into town for appointments, there would be a marked dodge county sheriff squad car or Waupun police squad car parked in the plaintiff's weekly travel routes used to enter and exist into the city of Waupun. As the plaintiff started to observe the behaviors, the plaintiff became aware he was in fact being shadowed. The plaintiff started becoming paranoid and fearful of law enforcement officials of the dodge county sheriff office and Waupun police department due to plaintiff's past experiences of police misconduct.

On May 3, 2016, plaintiff's suspicious and fears were confirmed that law enforcement officers were illicitly targeting plaintiff for surveillance and rough shadowing for at least month. The leading defendant detective Chad Haase met with Top Jail Administration Officials Jail Administrator Anthony Brugger, Deputy Adm. Jason D. Hundt, Deputy Adm. Thomas Polson, and shift Supervisor Dustin Beck concerning information detective Haase had personally generated thru his own actions and those of other parties involved. Upon returning to jail from a scheduled appointment. The plaintiff was served with a rule violation report generated by the dodge county detention facility on behalf of detective Haase. The plaintiff was removed for the Huber Law section of the jail and placed into the block for inmates without Huber law privileges. Prior to May 3, 2016, Detective Haase used his position and connections with Dodge County Detention Facility officials (unknown) to learn of the plaintiff's scheduled appointments in the community so detective Haase could personal stalk and shadow to illicit evidence to harm the plaintiff's personal liberties so the jail could take and did take forced punitive actions against the plaintiff in violation of the constitution of the United States. (*See Exhibit A*).

***The plaintiff received a dodge county detention facility rule violation for an "unauthorized stop on April 5, 2016"*** On this allege date, a City of Waupun police officer Ryan Schneider was assigned to patrol duties at approximately 9:01am officer Ryan Schneider was conducting stationary radar checks on East Main street, when officer Ryan Schneider observed a "Red Dodge Challenger" pass his location and head westbound on E. Main. Officer Ryan Schneider began to follow the vehicle and ran a check on the vehicle registration which revealed it registered to the plaintiff Gary Campbell. Officer Ryan Schneider proclaim he recognized this vehicle and name that the registered owner solder crack cocaine to the Dodge County Drug Task Force Agency in the City of Beaver Dam, WI. For no legitimate reasons Officer Ryan Schneider followed the plaintiff for several blocks, whereas because of plaintiff's paranoia the caused the plaintiff to turn off and pull into the safety of a shell gas station to avoid further harassment. Officer Ryan Schneider continued Westbound on Main Street and no longer followed the plaintiff Gary Campbell, according to statements made by officer Ryan Schneider that he did not have any traffic violations or equipment violation to stop the plaintiff's vehicle...(pretextual are a per violation of the 4th amendment in some circuits) However, officer Ryan Schneider makes reference to the plaintiff coming from a direction of highway 151 where there is another gas station Marshland mobile and he was at mile from and have no real knowledge of the plaintiff's location. Never-the-less officer did forward through official channels a report to the dodge county sheriff department attention. Directly related to his personal observation and shadowing the plaintiff while in the town of Waupun for detective Haase.

The plaintiff is asserting that officer Ryan Schneider personal participated in a scheme with detective and Haase to *open and rough shadow'* for discriminatory purposes; the plaintiff when the plaintiff was in the community. Detective Haase intent was to willfully and maliciously get the plaintiff's 9-year stayed sentence revoked and/or Huber Law privileges taken at the very least. Officer Ryan Schneider actions and written statement displays his duplicity. The plaintiff has never had any dealings with Officer Ryan Schneider or been arrested by any Waupun Police Department officer so there is absolutely no way officer Ryan Schneider knew the plaintiff's vehicle from anywhere other than the fact that the plaintiff was black and drove a Red Dodge Challenger. Officer Ryan Schneider *'departed from his normal course of duties'* which was doing stationary radar checks for traffic violations. However, officer Ryan Schneider decided to racial profile the plaintiff. First off, the plaintiff didn't break any traffic laws or exceed the speed limit to prompt officer Ryan Schneider to deviate from performing stationary radar checks to racial profile and target the plaintiff's vehicle. Second, there is no way any law enforcement official performing a criminal background check on a police squad car computer would reveal explicit detail information that plaintiff Gary Campbell specifically sold crack cocaine to the dodge county drug task force in the Bity of Beaver.[1]

The plaintiff had a valid licenses and proof of insurance. The plaintiff respectfully asserts that a criminal background check would reveal that the plaintiff was in fact convicted of 1-count of manufacture and delivery of cocaine, as a repeater in Dodge County, Wisconsin 2015. That will be the gist of the plaintiff record if ran. Officer Ryan Schneider actions reflects a clear deviation from a normal course of action a *"reason officer would do under normal circumstances"* due to officer Ryan Schneider acting in conformity with a conspiracy and specifically targeting the plaintiff for discriminatory purposes of sheriff office officials being named herein based on the plaintiff race. Waupun police officials advanced the aims of detective Chad Haase *'personal animus'* harbored against the plaintiff. Officer Ryan Schneider actions to forward to the dodge county sheriff office information regarding the plaintiffs' movements were arbitrary and discriminatory and were not reasonably related to a legitimate governmental objective. The plaintiff Gary Campbell was targeted by the City of Waupun Police Department officials and Dodge County Sheriff Office Officials. It is the plaintiff's contention that the City of Waupun has in place policies, customs and/or usages that allow for the Waupun Police officers and Supervisors to discriminate against minorities. The plaintiff Gary Campbell knows of no other police department that has policies that a allow a citizen to be purposely followed like the plaintiff and having *'violated no state laws, ordinances or committing any kind of crime civil or criminal nature'* have a report detailed, filed with his department and forwarded to the sheriff office attention.

In is the plaintiff's contention that officer Ryan Schneider has never forwarded such a report for a similar situated white motorist and therefore officer Ryan Schneider and John Doe, Supervisor participated in violating plaintiff's equal protection rights. Supervisor, John Doe approved and allowed the report to be sent through official police channel without questioning the purpose. Officer Ryan Schneider collaborated with Detective Haase to open and rough shadow the plaintiff, report any stops the plaintiff makes upon direct contact (on site) Plaintiff was singled out based on plaintiff's race, and for discriminatory purposes. The plaintiff's movements were being recorded for illegitimate reasons. Officer Ryan Schneider report was maliciously by Detective Haase for ill purposes to get the plaintiff's liberty interests taken. (*See exhibit A*) Officer Ryan Schneider did not target any other inmates from the Dodge County Detention Facility confined and serving a sentence like the plaintiff Gary Campbell. Because officer Ryan Schneider and Detective Haase never target a similar person but was acting pursuance to another personal animus.

---

[1] A criminal complaint would reveal that the plaintiff sold crack cocaine to Detective Chad Haase of the Dodge County Drug Task Force Agency. Said complaint is not part of the Waupun Police Department files and could only be found in either the Dodge County Clerk of Court office, or District Attorney Office. However, the information was implicitly imputed to officer Ryan Schneider by Detective Haase to illicit officer Ryan Schneider help.

The plaintiff's equal protection and due process rights were violated because the plaintiff suffered restrains on his liberty interest in violation of the constitution because of vindictive actions taken by and on behalf of a law enforcement officer and his friends. The plaintiff would like to note that Detective Haase did not notify the Huber facility staff of this incident alleged to have occurred on April 5, 2015. In which the plaintiff received as one of many rules violations reports that was a personal observations of detective Haase. Had this incident been reported the plaintiff would have lost Huber privileges pursuant **Wis. Stats 303.08 (10)** the sheriff (Dale Schmidt) could then refuse to permit the prisoner to exercise the prisoner's privilege to leave the jail as provided in **sub (1)** for not to exceed 5 day days for any breach of discipline or other violation of jail regulation. However, 5 days were not satisfactory enough because Detective Haase had harbored a personal animus and had other ulterior motives that prevent him from notifying Huber facility staff. Any other law enforcement officer upholding the integrity of the law would of report such abuse as duty bound and that is also ... constitutional requirement of State of Wisconsin, **Wis Adm. Code LES3.01 The plaintiff received a rule violation for an unauthorized stop on April 21, 2016.** Detective states that he observed the plaintiff coming into town of Waupun on Hwy26 at 12:28pm lost sight not at hospital at 12:35pm, observed at Citgo gas station at 12:39pm, drove to the hospital at 12:43pm (see exhibit A) Once again, detective Chad Haase and deputy John Doe (badge 237) rushed to the hospital were the plaintiff had a medical appointment for physical therapy for a shoulder injury sustained from excessive force police conduct in the past. The plaintiff spotted a dodge county sheriff squad parked in location waiting for the plaintiff to come into town. Plaintiff feeling paranoia of law enforcement official actions prompted to the plaintiff to pull into a gas station (feeling an anxiety situation) because of unknown improper police conduct.

Between 12:28 and 12:35pm to covertly watch the plaintiff. After the plaintiff didn't show right up at the hospital, they frantically got to driving thru the City of Waupun looking for the plaintiff as if the plaintiff was wanted for a crime. After calming down (because I have a medical condition for anxiety) the plaintiff leaves the gas station turning right unto E. Main St. In turning the plaintiff passed a mark dodge county sheriff squad. The plaintiff did in fact make it to his medical appointment for 12:45pm at 12:43pm on time. However due to detective Chad Haase and deputy John Doe (badge 237) took arbitrary action in stalking and shadowing the plaintiff. Detective Haase would later use this incident recorded by him to get the plaintiff deprived of his personal liberty in violation of the Constitutions of the United States and State of Wisconsin. Again had detention facility staff been notified of this incident the plaintiff Gary Campbell would of lost Huber law privileges **Wis Stats 303.08(10)** However, 5 days as pointed out previously wasn't enough because of detective Haase maliciously intentions for the plaintiff and so his ulterior motive prevent him from doing so. **On April 29, 2016, the plaintiff received a rule violation for an unauthorized stop and assumption the plaintiff was cited for a speeding and reckless driving violation of state law.** Once again prior to the plaintiff arriving in Waupun for a chiropractor appointment sheriff deputy, Detective Haase and John Doe drove to Waupun to conduct surveillance activities without permission or authorization from a Supervisor. According to detective Haase he knew when the plaintiff was leaving the jail at 12:30pm and arrived at the chiropractor's office at 1:10pm. Detective Haase shadowed the plaintiff whenever he had free time which seemed to be a lot. Detective observed plaintiff leave chiropractors office at 2:00pm and drives to the car wash next door, wash, and vacuum car, and then watches the plaintiff leave the car wash at 2:17pm to drive back to Juneau WI. While driving back defendants observed the plaintiff making several illegal passes of vehicles, passing multiple vehicles at once, speeding and driving recklessly. At one point we are traveling 80mph and couldn't keep up[2]

---

[2] There are serious and conflicting concerns who was exactly with Detective Chad Haase on this particular day due to documentation obtained by plaintiff. In one report Bulter is alleged to be with Detective Haase but in a different report to my sentencing judge requesting revoking Huber privileges. A deputy Ryan Schwartz witness the incident.

Defendant alleged to have paced the plaintiff Gary Campbell's vehicle through the 45 zone in Minnesota Junction at 60mph. The plaintiff's vehicle was stopped by badge 235 (Deputy Scott Petrack). It was because of detective Haase in telling the jail that I was in fact cited which was a malicious and false statement to get the jail to take punitive action to deprive the plaintiff of his liberty. The plaintiff passed a sheriff squad going to his appointment. Detective Haase and his partner had nothing else better to do other than stalk the plaintiff, remaining covertly parked watch the plaintiff arrives at an appointment hang around some more watch plaintiff wash and vacuum car for 17 minutes before the plaintiff heading back to the Huber facility. There was no rational basis for the defendant's actions other than harassment, waiting for the plaintiff to arrive so they could spend approximately 2 hours of their shift watching plaintiff go about the daily routine like all normal citizens. No supervisor officer would reasonably allow a drug detective officer to run a person operation against an inmate confined in Huber to accumulate *"jail rule violations"* The plaintiff wasn't involved in any illegal drug activities justifying being targeted by detective Haase and his partners for surveillance. In addition, detective Haase, deputy Buelter, deputy John Doe, and/or deputy Ryan Schwartz have been purportedly alleged to have followed the plaintiff back to Juneau from Waupun which is 14-miles during which time the plaintiff was observed personally by multiple defendant to have committed multiple traffic violations before these officials very eyes. However, the alleged traffic offenses were fabricated in violation pf due process by detective Haase and resulted in the plaintiff receiving a rule violation for speeding and illegitimate and manufactured traffic citation resulting in Second cause of action. *(see exhibit A)*

**On May 4, 2016, the plaintiff received a supplemental report filed by detective Chad Haase.** This report dates back to March 18, 2016 which states in relevant part that on *'5/4/2016 I officer Garbalagtys receives a call at 6:50am from detective Chad Haase asking him to add a supplemental report before the plaintiff went to a court proceeding.' On March 18, 2016 inmate Campbell was out on work release in Waupun going to several different appointments.* In between appointments I received a call from Detective Haase stating that inmate Campbell stopped at a residence in Waupun. After some research it was determined that it was the residence of the plaintiff Gary Campbell. Detective Haase called and informed me of this at 12:15pm. Detective Haase called back and stated that he left the residence at 12:40pm. Detective Haase also wanted to me to include that on 04/19/16 the K-9 unit did a search of Pod J before coming to pod J Deputy Fairman had a K9 walk around and she indicated a false hit on the vehicle of inmate Campbell. The plaintiff's keys were requested, which were given, and a search was completed, and nothing was found in the vehicle *(see exhibit B)*. The plaintiff contends the alleged hit on the vehicle was part of detective Haase continued, orchestrated campaign of official harassment directed at the plaintiff Gary Campbell. Fact is there were no drugs found or anything illegal evidence found inside or outside the plaintiff's vehicle. Detective Haase arranged deputy Fairman to have his k9 perform fake hit on the plaintiff's vehicle so it could be stripped and searched based on false pretense. As a result, officers did in fact cause damage plaintiff's 12inch subwoofers something the denied damaging in the plaintiff's complain to jail officials and sheriff officials.

Despite denying damaging plaintiff's personal property detective Haase used the incident to make it seem like the plaintiff was using drugs to have the plaintiff Gary Campbell's DOC agent notified in a attempt to get the plaintiff supervision while serving a Huber sentence revoked under law based on allegations of unauthorized stops as a direct consequence of a orchestrated campaigned of discrimination, official harassment and unauthorized surveillance activities conducted upon the plaintiff. *(see exhibit C)* Detective Haase and other law enforcement officials violated their ethic duties as a sworn law enforcement official under statutory mandates of **Wis Adm. Code LES3.01**. The plaintiff never received a rule violation report for the alleged incident detective supposedly called in March 18, 2016 on May 4, 2016. It a little obvious that detective Haase covertly shadowed and followed the plaintiff around town while the plaintiff went to multiple different medical appointment to gather illicit evidence to maliciously use against the plaintiff.

Detective Haase irrational conduct displays his *'malignant animosity'* towards the plaintiff. Prior to detective Haase going to top jail administration officials with incidents in which the plaintiff was alleged to have violated a rule of the county jail which was obtained as an orchestrated campaigned of official harassment. Detective Haase approached the Dodge County District Attorney with the illicit evidence to get the DA's office to file an objection to plaintiff's furlough requested granted by the plaintiff's sentencing judge, basing a objection, On jail rule violations, a fabricated speeding allegation and false assertions of drug use. This was all done vindictively by detective Haase to 'get a stop order to plaintiff's furlough request' to go mourn with plaintiff's family members and have other adverse effects like getting the plaintiff's Huber law privileges revoked. After getting the DA to protest [3] To ensure that plaintiff's Huber law privileges were taken detective spitefully went to the top jail administration officials who *'sanctioned detectives Haase, deputy Buelter, deputy Ryan Schwartz, deputy John Doe (badge 237,) deputy John Doe (badge 207,222)* malicious application of law enforcement powers in officially obtaining violations of jail rules to facilitate constitutional deprivation of plaintiff's rights. The Sheriff Dale Schmidt was made aware of the situation regarding the plaintiff because detective Haase which is personal know to the defendant Dale Schmidt the sheriff of dodge county not big in size who no doubly talk with one of his few, drug detective on the force.

The Sheriff Dale Schmidt, Jail Administrator Anthony D. Brugger, Thomas H. Polin Deputy Adm, and Jason D. Hundt Deputy Adm., *'all knew it was not detective Haase's job to officiously conduct surveillance activities against the plaintiff for the purpose of securing jail rule violations.'* These defendants are liable for the plaintiff's constitutional deprivation and knowingly and unknowingly became parties for participating in detective Haase conspiracy scheme in sanctioning his officious misconduct. Jail Administrators made sure plaintiff Huber privileges got taken by ordering their subordinate Supervisor Dustin Beck to have the plaintiff written rule violation based on dodge county detention facility Huber jail policy. He was further instructed to hold the plaintiff in from Huber because of detective Haase's information. Sheriff Dale Schmidt knew of the circumstances surrounding detective Haase actions and knew his Jail administration were going to make sure the plaintiff lost his Huber law privileges. **On May 4, 2016;** the plaintiff Gary Campbell was unexpectedly called to court for a hearing on plaintiff's already granted furlough request a week prior to this day. On the way over to the court, the plaintiff was escorted by Dodge County Detention Facility Officer Davison. But it was unusual to also need a program specialist too. Program Specialist Marvin was required to be present for the hearing because detective Haase intended a supplemental report to be used in court and a program specialist was require to answer questions about the report. One question, which should be asked was why didn't the plaintiff receive the rule violation with the other report incident report submitted on May 3, 2016 to sheriff and jail administration officials generated by detective Haase to unlawfully punish the plaintiff to his personal gratification eliciting other law enforcement officials to help pursuit personal animus detective Haase harbored against the plaintiff triggering singling out the plaintiff for personal discriminatory purposes.

Detective Haase wanted the supplemental report mentioned in court to unduly maliciously influence the sentencing court's decision to deny plaintiff's furlough request at the objection of the District Attorney, who detective Haase went to in the first instant. *(see exhibit B)* However, pursuit to information supplied to the DA by Haase. The DA made untrue statements during the hearing alleged, the plaintiff used drugs, tested positive for THC, which the plaintiff venomously denied and had proof of his innocence. The plaintiff attended an ADOA program located in Juneau WI and provided negative drug test screens every week while confined in the jail the court was also told that the plaintiff's DOC agent came to the jail and tested the plaintiff and that the plaintiff tested positive to THC which were a known false assertion.

---

[3] The district attorney would accuse the plaintiff of using drugs, speeding, driving recklessly, and making unauthorized stops to convince plaintiff sentencing judge.

However, the plaintiff contends that if he would have tested positive for THC or any illegal substances the jail has a mandatory policy of not letting an inmate leave with any kind of pending test lab results. The plaintiff would never have been allowed to leave the Huber facility for work release and other various medical appointments in the community with a positive drug test screen as a per se jail rule.[4] Never-the-less the plaintiff's agent when contacted by the court at the bequest of the DA on the telephone proclaimed that the plaintiff did test positive for THC as well as other pending rule violations which the plaintiff was losing his Huber privileges for. The court denied plaintiff's furlough request as a direct consequence of detective Haase orchestrated campaign of official harassment and his *'malignant animosity'* because the plaintiff was not sent to prison for selling drugs to detective Haase for his undercover drug actions taken during a control sting operation conducted by the Dodge County Drug Task Force Agency and supervised by a John Doe lieutenant, detective Haase was just an acting undercover agent for the county agency at that time of the sting operation. The actions taken against the plaintiff after conviction and not part a legitimate governmental interest were contrary to clearly established laws and procedures law enforcement officer must uphold. *'Subsequently, On May 9, 2016 the plaintiff's agent notified the court via written correspondence that plaintiff had tested negative for THC and synthetic cannabis and respectfully request on behalf the Department of Corrections the plaintiff be allowed 1 day to attend the funeral (see exhibit C)* But, the damage had already been done by Detective Haase's malicious actions. Plus, the plaintiff's Huber got revoked to.

The County of Dodge and City of Waupun municipalities had in place policies, customs and practices that allowed the defendants detective Chad Haase, deputy Buelter, deputy Ryan Schwartz, deputy John Doe's officer's (badge 222,202 and 27), Lieutenant Katup; officer Ryan Schneider, Waupun Police Department, John Doe, supervisor Waupun Police Department to conspire with detective Haase to use official reports among themselves relating to their unauthorized and illicit surveillance operations *'run afoul of the 14th amendment that protects and afford the plaintiff the right to be free from governmental surveillance"* unless the government has legitimate reason for singling out one for *'special scrutiny.'* In the plaintiff Gary Campbell's case, there was no rational basis for government surveillance conducted personal by detective Haase. The plaintiff was not engaging in any criminal activity nor of association with persons engaged in criminal activity. All the defendants did nothing to stop the progress or deter detective Haase from such personal malicious actions. All the defendants' Buelter, Schwartz, John Doe deputies, Lt. Katup, Supervisor John Doe Waupun police department, officer Ryan Schneider Waupun police department official willfully participated in Detective Haase's plot against the plaintiff and knowingly and/or unknowingly became a conspirator in a conspiracy by detective to deprive the plaintiff of his constitutional rights which detective was successfully in accomplishing unjustified unlawful action taken against the plaintiff.

*March 18, 2016, April 5, 2016, April 19, 2016 and April 29, 2016* are not dates, DCDF staff requested or asked Detective Haase or any officer of the dodge county sheriff department to perform Huber checks on the plaintiff's activities or whereabouts. The defendants arbitrarily exercised powers as government agents without any reasonable justification in service of a legitimate government objective. There was no government objective here. All the actions taken by law enforcement officials was based on detective Haase personal animus and animosity for the plaintiff. Detective Haase is an undercover drug detective for the dodge county sheriff department. The primary purpose of a drug detective is to detect, observe and arrest individuals involved in illegal drug activity and not acting to illicitly uncover Huber jail rule violations. Detective Haase had *no evidence or reason to believe the plaintiff was selling drugs prior to personally targeting* the plaintiff for discriminatory surveillance activities. The plaintiff Gary Campbell was singled out for arbitrary and irrational reasons.

---

[4] On 4/2016 the plaintiff's probation agent tested and told jail staff that the plaintiff's test result came back negative for THC and plaintiff was continued allowed to leave to jail premises.

The plaintiff was *'treated differently from similar situated persons confined at the Huber Facility with the plaintiff of different races and nationalities.* No other African American inmate similar situated or white similar situated inmate confined at the Huber facility experienced open and rough shadowing while they were in the community trying to be productive and trying to get their life, and health back on track. Nobody other inmate was subjected to a dishonest and vindictive investigation performed by detective Haase for a few months to generate jail rule violations[5] *There was no rational basis for the difference in treatment the plaintiff had to endure.* Although, the police are necessarily afforded wide discretion in performing their duties, that discretion does not extend to discriminating against or harassing people and using governmental powers of the City of Waupun and County of Dodge Sheriff Department to accomplish the aims of Detective Haase. Sheriff Dale Schmidt, Jail Administrator Anthony D. Brugger, Thomas H. Polsin Deputy Adm, and Jason D. Hundt Deputy Adm are all directly responsible for plaintiff due process and equal protection right violations. These law enforcement official senior in all respect knew that it *'was not detective Haase's job to imperiously perform checks on Huber inmates,' watch or follow inmates around to make sure that inmate arrive at scheduled appointments.* The Dodge County Detention Facility specifically task its own staff officials to perform Huber checks by monitoring inmates either by appearing at the inmate's location or telephoning to make certain the inmate is at his/her location. Wisconsin personal civil conspiracy claim mirror that of the federal in that **Wis. Stats. 134.01** states that any two or more persons who shall combine, associate, agree, mutually undertake or concert together for the purpose of willful or malicious injuring another in his person, reputation, trade, profession by means whatever, or for the purpose of maliciously compelling another to do or perform any act against his will, or preventing, or hindering another from doing or performing any lawful act.

a. On March 18, 2018 the plaintiff was obtrusively and covertly shadowed by detective Haase and his partner. These officers acted maliciously together against the plaintiff to gather illicit evidence of rule violations. That were used personal by detective Haase to get the plaintiff deprive of liberty interest.

b. April 5, 2016, Ryan Schneider, Waupun police officer acting on behalf and in agreement with detective Haase did open and rough shadow the plaintiff as part of a orchestrated campaigned of discrimination and harassment aimed at the plaintiff to secure any incriminating evidence in which to help detective Haase spiteful use against the plaintiff.

c. April 21, 2016, another case of detective Haase and his partner acting maliciously and without reason or permission from a supervisor conduct surveillance activities on the plaintiff for the purpose of fabricating evidence that the plaintiff committed multiple traffic violations for which detective Haase maliciously prosecute the plaintiff and cause the plaintiff injury to the plaintiff in his person and trade.

d. On April 29, 2016, Detective Haase, deputy Buelter and/or Ryan Schwartz again acting without reason or permission from a supervisor conduct surveillance activities on the plaintiff and fabricate evidence that committed multiple traffic violations to triggering plaintiff due process protection prosecute the plaintiff in court to cause the plaintiff injury in his person and trade.

e. May 4, 2016, Detective Haase contact jail official for a favor to add a supplemental report prior to a unexpected court hearing regarding the plaintiff's furlough request. Detective Haase intended the report to be used to negatively influence the court decision to deny the furlough already granted.

---

[5] Detective did act officiously and permit personal feelings to influence him to maliciously build up jail rule violation and fabricate and manufacture evidence. To proclaim to plaintiff DOC agent the plaintiff not only broke state laws but multiple jail rules in violation of the plaintiff supervision rules *(see exhibit L) to trigger the plaintiff being revoked on his 9-year stayed sentence.*

*The plaintiff is asserting that any citizen subjected to obtrusive, overt and covert surveillance by law enforcement officials in the manner that the plaintiff had to experience on more than a dozen occasions would develop irrational fears and paranoia of the police and act in the same way the plaintiff did pulling into the safety of a gas station* to avoid being shadowed by the police for no reason other than harassment. The plaintiff was maliciously and obtrusively followed by detective Haase and other officials while out in the community due to detective Haase having a personal animus and malignant animosity towards the plaintiff. The actions of the officers of following, shadowing, and watching the plaintiff was an invasion of the plaintiff's privacy. The plaintiff did not feel secure in his person, place or things and was forced to perform acts against the plaintiff's will like pulling into gas station to avoid the harassment and stalking of police officials. The plaintiff later suffered restrains on his liberty for stopping at a gas station out of fear of obtrusive police activities on him without jail staff permission. The 14th amendment ensures that each of us citizens are free from government surveillance unless the government has a legitimate reason for singling out a particular individual for special scrutiny. In the plaintiff cases there was no rational basis for government surveillance. The plaintiff again was not engaged in any criminal activity or of association with persons engaged in criminality activity to would justify detective embarking upon a expedition to generate evidence that the plaintiff violated rules of the jail. The Dodge County Detention Facility does not utilize Dodge County Sheriff Department patrol deputies or sheriff detectives to monitor and perform Huber checks on its jail inmates. Detective Haase is a drug detective whose primary purpose is detect, observe and arrest individual involved in illegal drug activity and not using his undercover job capacity duties to personally watch and follow a jail Huber inmate until he accumulates enough rule violations to get plaintiff's Huber privileges taken based on a clear malignant animosity for an inmate namely Mr. Gary Campbell. Detective Haase personal singled out the plaintiff and did not subject any other inmate of the Huber detention facility to the same and/or similar treatment given to the plaintiff.

**Claim II Class-one-Equal Protection, and Due Process, and conspiracy violations.** On 4/29/2016 detective Haase accused the plaintiff of speeding and reckless driving asserting to the jail administration that he observed the plaintiff speeding coming back from Waupun to Juneau. The defendant conducted personal surveillance operations against the plaintiff based on personal animus and animosity. *(see exhibit A)* According to detective Haase, the plaintiff left Waupun at 2:17pm. Detective Haase asserts he paced the plaintiff and at one point he was doing 80mph and couldn't keep up with the plaintiff but was able to observe the plaintiff illegally pass 3 vehicles at one time and he (Haase) continued to pace the plaintiff through Minnesota junction at 60 mph. *(see exhibit A)* detective Haase informed jail administration officials that the plaintiff got pulled over and was cited by another deputy. For the record never paced the plaintiff's vehicle because detective Haase was never behind the plaintiff's vehicle to pace the plaintiff. The plaintiff was pulled over by deputy Petrack, who did in fact followed the plaintiff through Minnesota Junction from the 4-way crossing section hwy 26 and county E Rd. The plaintiff was trailed through Minnesota by three vehicles: 1) vehicle was the plaintiff going the speed limit 45mph, 2) vehicle was another passage vehicle direct behind, and 3) vehicle was driven by deputy Petrack. There were no other vehicles that travel through Minnesota junction detective Haase fabricate pacing the plaintiff through Minnesota junction which would of put detective Haase directly behind deputy Petrack and 3 vehicles behind the plaintiff supposedly. But the truth is detective Haase wasn't nowhere in sight. However, detective Haase wanted deputy Petrack to cited plaintiff for multiple allegedly witnessed by detective Haase told to the jail to get plaintiff deprived of his liberty. Despite pulling the plaintiff over after following the plaintiff for approximate 5 miles deputy Petrack determined that the plaintiff did not violated any traffic law. Deputy Petrack called the jail on May 9, 2016 to inform the plaintiff he wasn't issuing the plaintiff any kind of speeding citation for anything contrary to a misrepresentation detective Haase told to the jail. DJA Polsin conspired with detective notifying Haase when Petrack didn't cite the plaintiff like Haase informed the jail. The same day the plaintiff filed an appeal to jail administration seeking immediate reinstatement of Huber privileges based on the facts that the plaintiff never broke any traffic law, sped recklessly or illegally passed multiple vehicles as reasons for revoking the plaintiff's Huber privileges. *(see exhibit E)*

Deputy Petrack knew detective Chad Haase had maliciously fabricated the speeding claim but detective Haase seriously thought, that deputy Petrack was going back and to support his personal scheme against the plaintiff and write a report which deputy Petrack to know to be untrue would violate the constitutional rights of the plaintiff as well as various federal and state law, So deputy Petrack refused to issue the plaintiff an illegitimate citation at the appeal of detective Haase. *'However, detective Haase was notified by his co-conspirator DJA Thomas Polsin.* As a result of Deputy Petrack's action to refuse to before a dishonor the badge he wears, unluckily, detective Chad Haase was forced to take some drastic and desperate measures and scrambled for a way to cover up the fabrication to jail administration that he and another officer observed the speeding and reckless driving by the plaintiff. Subsequently, Detective Haase had no other choice but to solicit his Supervisor Lieutenant Katup and Deputy Morell in a conspiracy to cover up (his) detective Haase's abuse of his governmental powers because of a personal animus and animosity he felt against the plaintiff. Because these sheriff department officials got together and decide who would willing issue the citation, the jail was notified and as a result. *'On May 10, 2016 the plaintiff received his decision back from jail administration denying appeal for Huber privileges "stating it has been determined that I (the plaintiff) did receive a citation". (see exhibit E)*

On May 11, 2016, the plaintiff received a falsified and manufactured traffic citation created on May 10, 2016 *(see exhibit F)* The plaintiff had Christina Burke (his child mother) contact deputy Petrack regarding a citation issued after deputy Petrack personal informed the plaintiff was not being cited for anything. Deputy Petrack responded back twice, the first time leaving a message with Ms. Christina Burke. Deputy Petrack informed Ms. Burke that management got involved. When Christina Burke finally talked to Petrack, he was more direct and stated that his supervisor got involved and made the decision to have someone else issues a citation to the plaintiff. After learning this the plaintiff call Deputy Petrack Supervisor Lieutenant Katup, who is also detective Haase's Supervisor and challenged the legality and basis for the issuance of the ticket when the Deputy who pulled the plaintiff over determined that the plaintiff did not violate any traffic offense. According, to Lt. Katup, he told the plaintiff that he could have any Sheriff Deputy he wants issue the plaintiff a citation and that he had the citation issued at the request of the complaining witness. This prompted the plaintiff to file an open records request On June 1, 2016 with the sheriff office. The request was denied *(see exhibit G)* Around the end of May 2016, the plaintiff's mother Cynthia Campbell called the Sheriff Dale Schmidt to complain about the wrongful treatment the plaintiff was being subjected to. The sheriff Dale Schmidt told the plaintiff's mother that the plaintiff knows he was speeding, and they know the plaintiff was speeding. The plaintiff's told the sheriff that if her son was going faster than 80mph as it has been alleged that the plaintiff would have been stopped immediately and there was no dash cam video. The sheriff was trying to hear the plaintiff's mothers complains about his officers and instead launched into a vicious charade about the plaintiff being a drug dealer. Plaintiff's mother informed the sheriff that she wasn't calling to hear her son accused of crimes not committed but to protest the way the plaintiff was being treated while confined in the sheriff facility and a citation that the plaintiff never should have been issued. Never-the-less the sheriff to the plaintiff's mother that his officers didn't do nothing wrong and a citation could be issued by another office. The sheriff addition stated that the plaintiff deserved to have his Huber taken.

Because of law enforcement officials conspiratorial and discriminatory actions, the plaintiff had to hire a private defense attorney at the plaintiff's financial expense to defend the plaintiff against manufactured and fabricated evidence by the law enforcement officials in violation of the Due Process Clause of the United States Constitution and Wisconsin Constitution. Defense counsel submitted discovery request with the Asst. Corporate Counsel representing Dodge County in a legal proceeding motivated illegitimate by detective Chad Haase. The plaintiff's attorney wasn't provided with any discovery material except for the deputy's narrative report *(see exhibit I)* and information from dispatch communication *(see exhibit J)*.

The plaintiffs also filed a request to the dodge county sheriff department requesting all information, evidence, dispatch communication reports, officer memo books, certification of speedometer, defendant's training in *'pacing vehicles'* any dash cam video/footage. However, the sheriff office never even responded back or provide any request material for the plaintiff preparation of a Jury Trial for allegations that the sheriff office refuse to provide the plaintiff by law. *(see exhibit K).* The plaintiff would like to note that Deputy Morell's citation narrative report is essentially the story that Deputy Petrack refused to collaborate for Detective Haase, who purportedly paced the plaintiff's vehicle in excess of 80mph and then observe the plaintiff pass 3 vehicles at once while traveling southbound on. Officer Haase/Buelter, Schwartz?) continued to follow and pace the plaintiff through Minnesota Junction in excess of 60mph. *(see exhibit I)* The plaintiff contends that if the allegations of detective Haase were true; that the plaintiff was driving in excess of 60mph thru Minnesota junction. Deputy Petrack certainly would have issued the plaintiff a citation for violating the speed limits of Minnesota, having no need to waste his time following the plaintiff for 5 miles. Any speeding violation would have been captured on Petrack's dash cam being in mark patrol vehicle. It is clearly apparent that the plaintiff was not speeding and deputy Petrack decided not to issue a citation.

For the record, nothing purportedly said by detective Haase adds up. The speeding allegation was nothing but a vindictive and malicious plot to get the plaintiff deprived of his liberties. That happen through getting plaintiff's Huber law privileges revoked through actions of coercion by detective Haase personal. However, detective Haase has done nothing but display his ill will and intentions for the plaintiff. Detective Haase so wrapped up in personal animus and wanting to be vindictive towards the plaintiff because the Dodge County Judge didn't send me to prison didn't sit well with detective Haase so he made it his personal business to see that the plaintiff was confined in the jail without Huber law privilege or sent back to prison on a charged fabricated and manufactured speeding and recklessly drive allegation. The actions involved violated the plaintiff's due process and equal protection rights to be free arbitrary and discriminatory government actions. The record will reflect that detective Haase pursued the plaintiff after sentencing based on a personal animus and malignant animosity because of his person dissatisfaction with the outcome of the plaintiff's sentencing. *"So, detective Haase deliberately tried to get the plaintiff's sentence revoked for 9-years.* Detective Haase involved others in conspiratorial scheme to harass and discriminated against the plaintiff through usage of his badge dishonorably to exact his own personal justice against the plaintiff in violation of the Constitutions of the United States and State of Wisconsin. It is the plaintiff's contentions that Detective Haase *"should have been the officer who wrote the traffic citation himself being that he, detective Haase had 'de facto' declared to have been following the plaintiff from Waupun to Juneau Wisconsin which is 14 miles during that time detective Haase personally witnessed various violations traffic Wisconsin traffic law being violated before his vary eyes but failed to notify the DODGE COUNTY DISPATCH and stop the plaintiff vehicle.* **Detective Haase had the authority as a law enforcement officer and was authorized to stop and cite the plaintiff for violating multiple traffic offenses.**

However, to avoid suspicion behavior detective Haase didn't want to be suspected of official harassment of the plaintiff so detective Haase tried to persuade another Deputy of the law to issue the plaintiff an illegitimate citation which Deputy Petrack refused to vouch for him. But detective Haase succeed in getting his supervisor Lt. Katup and Deputy Morell to conspire with him to issue a citation. The citation issued against the plaintiff violated the 1st, 4th and 14th amendments of the United States Constitution and Article section 1, 9 and 11 of the Wisconsin Constitution and *Wis. Stats. 134.01.* Deputy Petrack determined that there was no {probable cause or reasonable suspicion} that the plaintiff committed offenses described by detective Haase. In doing so deputy Petrack refused to cite the plaintiff. The only reason the plaintiff received a citation was because of a conspiracy to deprive the plaintiff of his constitutional right and to cover up the abuse of law enforcement powers to maliciously prosecute the plaintiff based on fabricated allegation by detective Haase.

The citation the plaintiff received was falsified and manufactured by deputy Morell for Detective Haase. It was impossible for the plaintiff to have committed the traffic infraction. First, deputy Morell purports to have been the arresting deputy which is completely false. Second, the plaintiff had personally talked to the dodge county dispatch, and the record from dispatch shows that deputy Petrack was the arresting deputy on this day. There is only one report concerning the traffic stop conducted on April 29, 2016. Deputy Petrack notified dispatch that he was pulling the plaintiff over at 2:35pm *(see exhibit J)* Third, deputy Morell had no personal involvement in pulling the plaintiff over nor did any other sheriff deputy come to the scene of the traffic stop. However, deputy Morell issued a plaintiff a citation for violating *Wis Stats 346.57(2) unreasonable and imprudent speed* in the Town of Burnett at 2:20pm on April 29, 2016. *It is plaintiff's contention of it being no way possible for the plaintiff Gary Campbell to have been in the Town of Burnett at 2:20pm. The town of Burnett is approximately 9.6 miles from Waupun WI.* There is a clear record according to detective Haase in his previous statement to jail administration that the plaintiff left the 'car wash' at 2:17pm *(see exhibit A)* It takes at least 3 minutes to get to the edge of Waupun heading to Juneau WI on hwy26. There is absolutely no way the plaintiff was in the town of Burnett at 2:20pm to have been able to commit a unreasonable and imprudent speed traffic infraction falsified and manufactured by deputy Morell for detective Haase. It would take the plaintiff at least 7.5 minutes driving at least 95mph according to google map to get from Burnett from Waupun. The plaintiff could not have reached the town of Burnett before 2:29pm.

The plaintiff contends that the function of every law enforcement officer is the prevention of crime and apprehension of criminals. Manifestly, the function does not include the manufacturing of crime. ***Sherman V. United States,*** *356 U.S. 369, 372 (1978).* Virtually every police function or duty is pursuant to some legal authorization in the broadest sense. ***Aikens V. Morries,*** *145 Ill.2d Dec.571, 583 N.E. 2d 487 (1991)* In this case Detective Haase departed from his normal course of duties to commit illegitimate wrongful acts against the plaintiff in hopes of getting the plaintiff sent to prison and/or loss of Huber Law privileges taken. Detective Haase and conspirators clearly supported detective Haase personal animus motivation of subjecting the plaintiff constitutional deprivations based on a personal malignant animosity towards the plaintiff. The actions taken against the plaintiff involved consist of singling the plaintiff out for different treatment from similar situated inmates. Discriminating and maliciously manufacturing evidence to intentional injure the plaintiff in his person, place, and property in which detective Haase secure support from various Supervisors, jail administration and sheriff officials. *The plaintiff contends that it is clearly established law and the Seventh Circuit has consistently held that a police officer who manufactures false evidence against a criminal defendant violates due process if the evidence is later used to deprive the defendant of his or her liberty in some way.* ***Whitelock V. Brueggeman,*** *682 F.3d 567, 580 (7th Cir. 2012)*

On October 4, 2016 **Dodge County by its Corporate Counsel** Julie K. Wilhem dismissed the traffic citation for unreasonable imprudent speed citation based on the essential witness was unable to appear due to a family medical emergency *(see exhibit M)*. However, the plaintiff asserts that Detective Chad Haase being the essential witness "had no intentions" of coming to testify at the plaintiff's Jury Trial hearing because detective Haase knew he fabricated the traffic offense against the plaintiff and had another deputy who wasn't presence issue a traffic citation against the plaintiff. Any testimony involving detective Haase would have involved committing perjury. Detective Haase was able to accomplish through unlawful means of a conspiracy involving his Supervisor Lt. Katup, and Deputy Morell to issue a traffic citation that violated due process of law of the United States Constitution. Detective Haase had deputy Morell falsify and manufacture a traffic offense after deputy Petrack refused to participate in detective Haase conspiracy scheme against the plaintiff. As a result of the actions of law enforcement officials, detective Haase was able to abuse his power and employ it as a instrument of oppression in violation of **Wisconsin State Statute Wis.Adm.Code LES3.01(1)(d) 1.2 and 3.**

Damage was sustained to plaintiff's, trade, profession and reputation. When detective Haase succeeded in getting jail administration to revoke the plaintiff's work release (Huber Law) privileges, detective Haase had no intentions of getting exposed on the jury stand by plaintiff's defense counsel. **Furthermore,** Detective Haase was not the only witness, neither was detective Haase the only essential witness. According to DJA Thomas Polsin report to the plaintiff's sentencing judge, Deputy Ryan Schwartz observed with Detective Chad Haase the reckless driving and speed. In Deputy Morell manufactured report for detective Haase, its clearly alleged that Morell got the information from Detective, and Deputy Buelter who is alleged to had been with detective Haase instead of Officer Schwartz. *(see exhibit D and I).* The plaintiff had a liberty interest in defensing his self against one of three of plaintiff's accuses and the record reflects it was three people who witness the plaintiff committing crime for which I was suffered constitutional deprivation that either of the other two officers had any kind of emergency and was just as essential a witness as detective Haase who conveniently couldn't make it to testify about his unlawful actions especially Deputy Morell who purportedly was the arresting deputy. *Nevertheless, neither Morell or Buelter was going to come to court and testify knowing to evidence fabricated by detective Haase but that turned a blind eye. They supported detective Haase unlawful actions and singled the plaintiff out for arbitrary and discriminatory government that served no legitimate government interest here. It was a conspiratorial scheme by detective Haase involving several different law officials of the City of Waupun Police Department and Dodge County Sheriff Department and Dodge County Detention Facility Jail Administration and staff officials*

Detective Haase illegal action based on his personal animus for the plaintiff Gary Campbell brought to bear the Dodge County Municipal Government to prosecute the plaintiff on evidence detective Haase knew to be false and manufactured to protect his misconduct and fabricated statements to Jail Administration officials where the plaintiff was serving a sentence under the State of Wisconsin Huber laws to punish the plaintiff and have retrains placed on the plaintiff's liberty to receive medical treatment, drug counseling, and work release under Huber law in the community cover at the plaintiff's on expenses. If the government is brought to bear on a harmless individual merely because a power state or local official harbors a malignant animosity toward an individual, *the County of Dodge* is liable, as the County it establishes policies, customs and practices for the Dodge County Sheriff Department to uphold the law and not engage in illicit activities against a Huber inmate to obtain jail rule violation. The clearly does not serve any legitimate Local, State, or Federal government interest. "Dale Schmidt, Sheriff knew of the abusive behaviors and actually condoned them. The Sheriff was deliberate indifference of the abusive of law enforcement powers and adopted the illegitimate activities as county policy for the dodge county sheriff department and dodge county detention facility which the Sheriff Dale Schmidt is Head tasked with operation authority for both but separate entities.

Municipalities are persons within the meaning of 1983 and are liable for the unconstitutional acts of their agents. The plaintiff suffered unconstitutional deprivation because of a conspiracy of dodge county sheriff officials falsifying and manufacturing evidence against the plaintiff to protect and help detective Haase. The *County of Dodge Wisconsin acquiesced to the conduct of detective Haase by filing charges against the plaintiff.* **<u>Claim III Disciplinary Hearing Due Process Violation and Equal Protect Conspiracy</u>.** The plaintiff never was going to have a fundamental fair disciplinary due process hearing in relation to plaintiff rule violation report dictated by detective Haase. Just as sheriff management (Lt. Katup) got involved and had a traffic citation manufactured on behalf of detective Haase to protect vindictive behaviors. The plaintiff was going to lose his Huber law, work release, medical treatments, and drug counseling treatment in the community because of the malicious application of law enforcement powers. Detective Haase sent to dodge county detention facility administration after *'officiously and maliciously'* targeting the plaintiff for discrimination. Detective Haase conduct was clear deviation from the normal course of his job duties and the mandates of *State of Wisconsin State Administrative Law **Wis.Adm. Code LES.301 (1)(d) 1.2.3. and 4*** (Law Enforcement Board Standards policies mandated all law enforcement department and officials to follow)

Those procedures don't entail law enforcement officials acting officiously to conduct surveillance activities in hope obtaining rule violations to get the plaintiff removed from his Huber law privileges. Detective Haase through dishonesty in *'thoughts and deeds'* made certain that the plaintiff would lose his Huber privileges by go directly to top jail administrators of the detention facility. *These 3-defendants themselves sanctioned the conduct of detective Haase knowing full well that it was not in detective Haase's job description to officiously conduct surveillance activities on any Huber inmate while out in the community and not involved in illegally selling controlled substances*. Detective Haase, had no evidence or legitimate reason at all justifying conducting surveillance activities on the plaintiff Gary Campbell. It was perpetrated by detective Haase out of *'ill will'* for the plaintiff. No reasonable superior officer of the law; would allow a Detective, whom primary purpose is to detect, observe and arrest individual involved in criminal activities (illegal drug sales) to engage in a personal vendetta against a county jail Huber inmate on the Dodge County Sheriff Departments time. The touchstone of due process protection is protection against arbitrary action of government, whether from denial of procedural fairness of the "exercise of power without reasonable justification in the service of a legitimate government objective."

*"The Due Process Clause is meant to prevent government officials from abusing their power employing it as a instrument of oppression which detective Haase did employ against the plaintiff."* The plaintiff Gary Campbell is contending that he was singled out for arbitrary discrimination. A due process hearing could not cure the constitutional deprivations intentional inflicted upon the plaintiff by government agent's conduct. Detective Haase made sure plaintiff Huber was going to be lost by meeting with his conspirators Jail Administrators whom he meets with regarding the plaintiff. These administrative officials directed their subordinates to write the plaintiff rule violations. There is no secret what type of action could be expected by the dodge county detention facility staff. No program specialist, particularly the specialist assigned to conduct a due process hearing regarding plaintiff's rule violations was without the knowledge that plaintiff Huber was to be taken that decision came from the top, the Sheriff Dale Schmidt, and his three Jail Administrators, Anthony D. Brugger, Thomas Polsin, and Jason D. Hundt. Furthermore, knowing what jail administration policy and wishes for the plaintiff. The specialist conducting the disciplinary hearing wasn't going to go against a department directive of jail administrative to remove the plaintiff from Huber. (*see exhibit A*)

The decision to revoke the Huber privileges was already determined by the hearing officer before the hearing. There was nothing the plaintiff could say. The disciplinary proceedings were discriminatory and violated the Due Process Clause of the United States Constitution, and Wisconsin. As the decision was based on the prejudices jail administration officials dictated to be followed by program staff members in relation to the plaintiff. The due process clause contains a substantive component that bars certain arbitrary wrongful government actions, "regardless of the fairness of the procedures used to implement them **Zinermon V. Burch, 494 U.S. 113, 110 S.Ct 975 (1990);Daniel V. Williams, 474 U.S. 327, 331, 106 S.Ct 662 (1986).** The plaintiff's due process rights were violated by the disciplinary hearing action to revoke the plaintiff's Huber law privileges. First Off, the hearing officer conducted the hearing right outside the door of the cellblock the plaintiff was confined, other inmates could stand by the door and hear everything being said. *'The incident report was not read to the plaintiff, but the plaintiff did acknowledge that he received and reviewed a copy of it.* When asked about the incidents the plaintiff explained to hearing Program Specialist Ellis that he was being harassed by a Dodge County Sheriff Detective Chad Haase. The plaintiff admitted to stopping at the gas stations because he was paranoid of the police following him. The plaintiff admitted to stopping at the car wash to clean his vehicle as the plaintiff had been incarcerated for 5 months with really build up trash. However, program specialist Ellis informed the plaintiff he was dropping the unauthorized stops as he was not concerned with them. The plaintiff immediately told specialist Ellis that, the plaintiff did not speed or illegally pass any vehicles on his way back to Juneau from Waupun.

However, program specialist Ellis told the plaintiff that he was finding the plaintiff guilty of speeding. The plaintiff questioned how he was finding guilt for speeding when there is no evidence to prove the plaintiff was speeding. (A traffic Citation did not exist although detective Haase made false statements to the jail). However, specialist Ellis informed the plaintiff the matter had to be taken up with the plaintiff's sentencing judge. The next day plaintiff receives specialist Ellis decision. The plaintiff contends that the written decision of Ellis violated the plaintiff procedural due process rights and the principles established in **Wolff V. McDonnell, 418 U.S. 539, 94 S.Ct 2963 (1974)** *(see exhibit N)*. Program specialist Ellis based his decision on the factual basis of a report. Due Process demands that a written statement be given as to the evidence relied upon. Specialist Ellis failed to give adequate reasons justifying his decision. There was no substantiated evidence to find to the plaintiff guilty. Specialist Ellis did not find the plaintiff's statement denying speeding and passing vehicles to be "incredible" Nor was there anything mentioned in the written decision on the findings of the credibility of the detective who made phony allegation witnessing the plaintiff violate multiple traffic laws. Rather than pointing out essential facts which inference were based. Program Specialist Ellis merely based a finding of guilt on the factual basis making no reference to the reliability of the officer who filed the report. Simple reference to record as the basis for a decision may hide a failure to make a decision. **Meeks V. Gagnon, 95 Wis. 2d 115, ¶125-126, 289 N.W. 2d 357 (1980)** citing **Edmonds V. Boards of Fire & Police Commirs, 66 Wis. 2d 337, 348, 224 N.W. 2d 575, 581 (1975).**

The plaintiff contends a statement that hearing officer relied on a reporting officer eyewitness account would have been sufficient to satisfy due process but that did not happen in this case. No reference was made to plaintiff being cited for a traffic citation even though detective Haase told jail administration that the plaintiff was cited by badge 235 on April 29, 2016.Nevertheless, was never cited by Deputy Petrack because he knew that detective Haase fabricated the traffic offenses. The defendants compounded the constitutional violations of the dodge county detention facility and sheriff department by abusing their powers and employing it as an instrument of oppression against the plaintiff. On May 3, 2016 the plaintiff filed an appeal with jail administration requesting Huber privileges be reinstated based on grounds that the notions of plaintiff speeding were false and there was no proof of the allegations against the plaintiff. Also, plaintiff pointed out that no citation has been issued to me. However, jail administration denied the request stating the Deputies were following/watching you prior to you being pulled over. *The plaintiff asserts that there is no secret that Deputies were watching plaintiff while he was in Waupun but the plaintiff was never followed by detective Haase or deputy Buelter who gave a false report to the jail on May 3, 2016 to get the plaintiff's privileges taken.* (*see exhibit o*). On May 4, 2016 the plaintiff filed a request to the sentencing judge to get Huber reinstated. However, the plaintiff's request was intentional withheld from the court by jail administration until the plaintiff was physically served with a traffic citation. As previous stated Deputy Petrack notified the plaintiff at the jail on May 9, 2016 no citation would issued.

This prompted the plaintiff to file another appeal with jail administration, in which DJA Thomas Polsin continued to support detective Haase by notifying him that the plaintiff would get his Huber back because no citation was being issued like the detective informed jail administration which forced Haase to conspire with his supervisor and deputy Morell to manufactured a citation in violation of plaintiff due process right. DJA Polsin finally sent to the court the plaintiff letter request reinstatement of Huber privileges. DJA Polsin was able to write a reason to deny the request to reinstate based on the fact the plaintiff did in fact receive a citation. *(see exhibit E)*. The actions taken by Jail Administration was done in "furtherance" of a conspiracy against the plaintiff. Nevertheless, the plaintiff sentencing judge granted reinstatement of Huber privileges if speeding was the only violation. The plaintiff is asserting that the dodge county detention facility administration and sheriff office weren't happy with the court's decision and continued to employ government powers as instrument oppression against the plaintiff.

DJA Thomas Polsin acting maliciously on behalf of Sheriff Office and Detention Facility deceitfully went to the Chief Judge of the Dodge County Circuit Court behind the back of plaintiff's sentencing judge to circumvent and supplant the authority and order of plaintiff's judge order granting reinstatement of Huber if speeding was the only allegation; when the judge out of court for 3 days on vacation. Instead of waiting the defendants made accusations that the plaintiff had other rule violations "knowing full well that those violations were dropped". The Chief Judge, knowing of no circumstances of the case which were clearly known to the plaintiff's sentencing judge who was closer to knowing facts which the defendants deprived the chief judge of true knowledge to made a rationale and informed decision free of undue influence of official misconduct. The defendants used false and misrepresentation to get the Chief Judge to denied without question or hesitation plaintiff's Huber privilege based on the grounds of other rule violation. It is the plaintiff contention the never would have been able to pull a stunt like that on his sentencing Judge that why they went behind his back to his Supervisor with information they knew to be untrue.

The plaintiff contends that this deed was further abuse of power and in violation of the plaintiff's due process rights. DJA Polsin through deception and fraud perpetrated upon the court, was in essence arguing the plaintiff Huber was taken for other rule violations besides speeding which was not the case. In order for the jail to revoke the plaintiff's Huber for violations besides the alleged speeding rule violation (A046) The Sheriff Dale Schmidt and his Jail Administration was required by due process of law to find the plaintiff guilty of said rule violation (B059) in a disciplinary hearing proceeding. **_Wolff V. McDonell,_ 418 U.S. 539 (1974)** (see exhibit N). Before, a prisoner may lose a privilege in which the prisoner has a liberty interest and subject to changes of conditions of confinement. The plaintiff is entitled to certain minimum requirements of procedural due process including a written statement as to the evidence relied upon and the reasons for disciplinary action taken. Government entities must be bound by the regulation which they themselves have promulgated. **_State ex rel. Anderson-el V. Cooke,_ 234 Wis. 2d 626, 610 N.W. 2d 821 (2000);_Meeks V. Gagnon,_ 95 Wis. 2d 115 (1080);_State ex rel. Jones V. Franklin,_ 151 Wis. 2d 419 (Ct.App.1998)** when a agency does not abide by its own procedural rules, the agency "acts beyond its authority".

Accordingly, an inmate must be given a written copy containing the hearing officer's decision along with the punishment administered, if applicable. This Honorable court can ascertain out of the 4 rule violations the plaintiff was only found guilty on rule violation A046. It clearly states the disposition (punishment administered) for that rule violation A046 speeding. As, Program Specialist Ellis informed the plaintiff at the time of he is conducting the hearing that he was dropping the 3-rule violation for B059 and was requesting that the plaintiff's Huber be revoked for the speeding violation. Nevertheless, the DJA deceitfully went to the Chief Judge professing that the plaintiff's Huber privileges for rule violations dropped by program specialist Ellis, but purportedly read-in his written decision. The plaintiff contends the due process of law required a finding of guilt on violating rule B059. Instead of finding the plaintiff guilty of the of the unauthorized stop violations (B059) specialist Ellis dropped them giving the plaintiff a verbal reprimand in keeping with the Dodge County Detention Faciality policies and procedure promulgated in its own disciplinary handbook page 11-12. In order to revoke the plaintiff Huber privileges for the B059 violations, the DODGE COUNTY DETENTION FACILITY acting thru it agent Officer Ellis was required by due process of law to find the plaintiff guilty on that violation and making reference on the record and in his written decision. Officer Ellis decided to administer *"no punishment for those violations and hereby dropped them. Specialist Ellis decision is clear..."Huber revocation was being requested for rule violation A046." The Dodge County Detention Faciality Administration acted arbitrarily and maliciously in continuing to employ their governmental power as instrument of oppression against the plaintiff in violation of the plaintiff's constitutional right in furtherance of the conspiracy to support Detective Haase."*

The actions of the defendants on behalf of the detention facility was committed pursuant to policies, customs and usages of the Dodge County Sheriff, and Dodge County Detention Facility which were adopted pursuant to the policies, customs and usages conferred upon them by the County Of Dodge Wisconsin. Detective Haase acted officiously permitting his ill will, personal feelings, prejudices, and animosities influence him to commit dishonest action towards the plaintiff personally eliciting other law enforcement officer and using department resources to carry a personal vendetta. Detective Haase and all defendants (which are officers) abused their badges and oath sworn, as officers of the law. The defendants in this case forsaken the duties sworn to be upheld and mandatorily mandated by **Wisconsin State Law, Stats. 165.85 (1) and Wis. Adm.** Code LES.301 "imposes on all law enforcement officials. In addition, the Constitutions of the US and Wisconsin prohibited the conduct Detective Haase and conspirators engaged in inflicting upon the plaintiff unconstitutional deprivations. *The State Legislature for Wisconsin enacted* **Wis. Stats § 165.85 (4)(c)** *empowers the Wisconsin Law Enforcement Standards Boards* to adopt rules specifying the minimum qualifications including character, educational and training standards which person desiring employment as law enforcement must meet: in addition to the requirements of **Wis Stats § 165.85 (4b)** Detective Chad Haase, and all defendants contained herein are law enforcement officers, and were bound to follow the rules and regulation promulgated by **Wis. Adm. Code LES.301 (1)** all the defendants violated the minimum standards for preparatory training for law enforcement and tribal law enforcement officers "*shall require that"* **sub (d)** the law enforcement code of ethics, as set forth, below shall be administered as oaths to all during the preparatory.

1. AS A LAW ENFORCEMENT OFFICER. My fundamental duty is to serve humanity, to safeguard lives and property, to protect the innocent against deception, the weak against oppression or intimidation, and the peaceful against violation or disorder, and to respect the Constitutional right of all persons to liberty, equality, and justice.
2. I will keep my private life unsullied as an example to all: maintain courageous in the face of danger, scorn, or ridicule, develop self-restrain, and be constantly mindful of others. Honest in thought and deed in both my personal and official life, I will be exemplary in obeying the laws of the land and regulations of my department. Whenever I see or hear of a confidential nature or that is confided to me in my official capacity will be kept secret unless revelation is necessary in performance of my duty.
3. I will never act officiously or permit personal feelings, prejudices, animosities, or friendships to influence my decisions. With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without favor or malice, ill will, never employing unnecessary force or violence and never accepting gratuities.
4. I recognize the badge of my office as a symbol of public faith, and I accept it as public trust to be held so long as I am true to the ethics of the police service. I will constantly strive to achieve these objectives.

Because the defendant departed from their normal course of duties as law enforcement officials, to commit unlawful act against the plaintiff are liable and, the plaintiff therefore is suing the County of Dodge, Dale Schmidt Sheriff, in his official/individual capacity, Lieutenant Katup, in his individual/personal capacity, Detective Chad Haase in his individual/personal capacity, Deputy Buelter, in his individual/personal capacity, Deputies John Doe's Badge 237, 202, 207) in their individual/personal capacities, Jail Administrators Anthony D. Brugger, Thomas Polsin and Jason D. Hundt in their official/individual capacities, Program Specialist Ellis, in his individual/personal capacity,, The plaintiff is further suing the City of Waupun, Waupun Police Department Supervisor John Doe, in his individual/personal capacity, Officer Ryan Schneider, in his individual/personal capacity for Conspiracy, and violations of the plaintiff's *1st, 4th, 14th amendment* rights of the **United States Constitution** and **Wisconsin Constitution Articles 1 section § 1, 9 and 11, Wis. Stats 134.01, Wis. Adm. Code LES.301.** The plaintiff's rights were violated by all the defendant's mentioned above, who all acted under color of state law.

The plaintiff suffered extreme grievously injury in his person at the hands of the defendants named in this complaint. By intentional, arbitrarily, and maliciously violating the plaintiff Gary Campbell's constitutional right. The plaintiff suffered constitutional deprivation and loss of his liberty interest in life to medical treatment, loss of employment where plaintiff potential gross approximately $40,000 a year with a 401k, insurance benefits for plaintiff and his children. *As a result, the plaintiff Dodge Challenger was repossessed putting the plaintiff further in debt, plaintiff incurred bank debts, that negatively impacted the credit in the eyes of financial institutions causing the plaintiff financial ruin, physical suffering as the plaintiff wasn't able to get treatment for physical health due to loss health insurance through employment that the dodge county sheriff doesn't provide for inmates confined in his detention facility. The plaintiff suffered emotional distress, public embarrassment, and humiliation, increased in child support arrears and interest debt, and defaulting on legal obligations that negatively effected the plaintiff credit and life, and property.*

**THEREFORE,** the plaintiff is seeking the following monetary relief: **$1,000,000** in Compensation Damages, **$1,000,000** in Punitive Damages from Dodge County. **$500,000** in Compensation Damages and **$1,000,000** in Punitive Damages from Detective Chad Haase, **$500,000** in Compensation Damages and **$1,000,000** in Punitive Damages from Deputy Buelter, **$500,000** in Compensation Damages and **$1,000,000** in Punitive Damages from Deputy Michael Morell, **$500,000** in Compensation Damages and **$1,000,000** in Punitive Damages from Deputy Ryan Schwartz, **$500,000** in Compensation Damages and **$1,000,000** in Punitive Damages from Deputies John Doe's (Badge 237, 202, and 207) **$500,000** in Compensation Damages and **$1,000,000** in Punitive Damages from Sheriff Dale Schmidt, **$500,000** in Compensation Damages and **$1,000,000** in Punitive Damages from Lieutenant Katup, **$250,000** in Compensation Damages and **$500,000** in Punitive Damages from Dodge County Detention Facility Officials, Anthony D. Brugger, Thomas Polsin, Jason D. Hundt, Program Specialist Ellis **$250,000** in Compensation Damages and **$500,000** for a total amount of **$16,050,000.00** jointly and severely from each defendant listed above.

**Further,** the plaintiff is seeking **$250,000** Compensation Damages and **$500,000** from the City Of Waupun, **$250,000** in Compensation Damages and **$500,000** in Punitive Damages from Supervisor John/Jane Doe, and **$250,000** in Compensation Damages and **$500,000** in Punitive Damages from Officer Ryan Schneider, for a total amount of **$2,250,000**, jointly and severely from each defendant listed above.

**WHEREFORE,** the plaintiff is seeking a total of **$18,300,000** million dollars from each defendant mentioned in this complaint jointly and severely.

The plaintiff is also demand a Jury Trial

Dated  1  day of  September , 2020.

Respectfully Submitted,

*[signature]*

Gary B. Campbell, Jr (414) 793-9027
1814A. W. Chambers Street
Milwaukee, Wisconsin 53206,
garybcam9@gmail.com